UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-14031-CR-CANNON/MAYNARD

UNITED STATES OF AMERICA,

v.

MIGUEL ANGEL HERNANDEZ,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

Defendant Miguel Angel Hernandez ("Defendant") is charged with being a felon in possession of a firearm and ammunition based upon evidence seized from his vehicle on May 11, 2022. Defendant has filed a Motion to Suppress ("Motion") seeking to suppress all direct and derivative evidence stemming from the warrantless search of the vehicle. DE 22. The Government responded in opposition, DE 28, and Defendant has replied, DE 42.

Defendant's Motion is referred to me for a Report and Recommendation. DE 31. I held an evidentiary hearing on September 28, 2023. For the following reasons, I find that the warrantless search of Defendant's car was justified under Fourth Amendment jurisprudence. Thus, I recommend that Defendant's Motion be **DENIED**.

## EVIDENTIARY HEARING

At the hearing, the Government presented testimony from two Fort Pierce Police Department ("FPPD") officers: Detective Justin Gullett and K-9 Officer James Pulliam. The Government also submitted the following exhibits: video from the body camera of Detective Gullett on May 11, 2022 (Govt. Exs. 1 and 2); video from the body camera of Officer Pulliam on May 11, 2022 (Govt. Ex. 3); and certification records for Officer Pulliam's K-9, Wyatt (Govt. Ex.

4).  Defendant cross-examined the Government's witnesses.  Defendant offered no witnesses or exhibits.

## FINDINGS OF FACT

The following findings of fact are based on evidence presented at the evidentiary hearing and my review of the exhibits, including the body cameras' video footage.  These factual findings are based, in part, on credibility determinations, after observing all the witness testimony together with the other evidence presented.  Except where otherwise noted, I find that all the witnesses testified credibly.  *See U.S. v. Menendez*, 2000 WL 36733765, at *1 (S.D. Fla. Oct. 2, 2000) ("Rulings on motions to suppress involve mixed question of law and fact … [One] issue of fact … [is] the credibility of the witnesses.").

On May 11, 2022, law enforcement executed a federal search warrant on the residence located at 119 North 16th Street, Fort Pierce, Florida (the "Residence").  Participating agencies included the FPPD, the Department of Homeland Security ("DHS"), and the Bureau of Alcohol, Tobacco, and Firearms ("ATF").  The warrant authorized law enforcement to search the Residence for narcotics and firearms.

Prior to executing the warrant, law enforcement used a loudspeaker to announce their presence and instruct everyone inside the residence to come out.[1]  Several people exited the Residence, including Defendant, who was found in the carport adjacent to the Residence.  A small group of bystanders also gathered nearby with at least one woman shouting at the officers.  To maintain order and manage the scene, law enforcement handcuffed the individuals who came out of the Residence, including Defendant, and escorted them to a shady area across the street from the Residence.  At some point, Defendant pulled out his phone and Detective Gullett confiscates it,

---

[1] The loudspeaker message stated repeatedly "Occupants of 119 North 16th Street.  This is the Police.  We have a Warrant.  Come out with your hands up."

telling the Defendant he cannot have the phone while he is in custody and temporarily detained. Defendant, who does not live at the Residence, responds that he just came from dialysis and shows Detective Gullett a receipt from his dialysis provider.

The video camera footage shows that Detective Gullett explained to the occupants of the Residence that they were detained and not free to leave while the search was conducted. He read *Miranda* rights to each occupant, including Defendant. After reading Defendant his rights, Detective Gullett asked Defendant if he had any questions and if he understood. Defendant responded that he did not have questions, and he did understand. Detective Gullett then asked Defendant whether the silver Ford F150 truck parked in the front of the Residence belonged to Defendant. Defendant nodded his head yes. Detective Gullett asked whether there was anything inside the vehicle. Defendant jokingly responded that there was a McDonalds food bag in the car. Detective Gullett then asked Defendant, "Do you mind if we take a look inside?" and Defendant stated that there was "no dope, no none of that" in the vehicle. Detective Gullett asked "do you mind if we search" and Defendant shook his head no. Detective Gullett told Defendant he would have a dog go around the vehicle, and if the dog alerted, that would provide probable cause to search.

FPPD K-9 Officer Pulliam walked his canine, Wyatt, around the F150 truck to conduct a sniff for narcotics. Wyatt positively alerted for the presence of narcotics at the front passenger door. Detective Gullet informed Defendant his consent was no longer necessary and attempted to open the F150 to search, but discovered it was locked. He asked Defendant for the keys, and Defendant complied. Detective Gullett searched the Ford F150 and discovered a loaded Sig Sauer P226 9mm handgun in the center console. No narcotics were found inside the truck. Detective Gullett asked Defendant if he was a convicted felon and Defendant responded "yes."

Defendant was arrested and transported to the FPPD for processing and questioning. He was read his *Miranda* rights again, which he acknowledged and waived. He admitted that the gun and ammunition in the truck belonged to him. He admitted that he is a previously convicted felon, and he knew he could not possess a firearm.

On July 13, 2023, a federal grand jury returned an Indictment charging Defendant with being a convicted felon who knowingly possessed a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

## **ANALYSIS**

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause.'" *U.S. v. Batson*, 749 F. App'x 804, 806 (11th Cir. 2018) (quoting U.S. Const. amend. IV). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990)). The Supreme Court has "repeatedly affirmed" that "the ultimate touchstone of the Fourth Amendment is reasonableness." *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014).

Defendant argues that the search of his vehicle was unlawful because he was a visitor to the Residence, the warrant did not authorize law enforcement to search his truck, and officers had no reason to think he was armed, dangerous or in possession of any contraband.[2] The Government responds that Defendant was lawfully detained while law enforcement executed the search warrant, Defendant gave consent to search his truck, and police had probable cause to search the truck based

---

[2] Defendant initially argued that law enforcement violated his rights by not advising him of his *Miranda* warnings before questioning him, but he subsequently withdrew that contention as confirmed by his counsel at the suppression hearing. *See* DE 48 at 5.

on a positive canine alert for narcotics. Defendant contends that he did not consent to the vehicle search and that the positive K-9 alert was unreliable.

I agree with the Government's position and recommend that the Motion be denied. As a preliminary matter, Defendant was lawfully detained despite being a visitor to the Residence. In *Michigan v. Summers*, 452 U.S. 692 (1981), the United States Supreme Court held that detaining the occupant of a search location for the duration of the search was categorically reasonable. *See Bailey v. U.S.*, 568 U.S. 186 (2013) (holding that categorically, the occupant of a location being searched can be detained incident to the search, even without individualized suspicion); *Muehler v. Mena*, 544 U.S. 93, 95-96 (2005). Such detentions are justified on the grounds of (1) officer safety, (2) facilitating orderly completion of the search, and (3) preventing flight. *Summers*, 452 U.S. at 702-03. Each interest was implicated here. First, the occupants of the Residence could have jeopardized officer safety (indeed, Defendant had a loaded gun in his nearby truck). Second, the occupants could have interfered with execution of the search warrant, hidden evidence found in the home or carport, distracted the officers, or simply gotten in the way. Third, Defendant could have fled the scene (as two people did in response to law enforcement's call out on the loudspeaker). Thus, Defendant's detention was lawful and is not a basis for suppression in this case.

Defendant's lawful detention, however, did not in and of itself authorize a search of his vehicle and the Government acknowledges that the search warrant did not authorize a search of Defendant's vehicle. The truck was not identified in the warrant, was not on the property, and was not within the curtilage of the Residence.

The Government argues that Defendant consented to a search of his truck and probable cause existed based on a positive K-9 alert for narcotics. I agree.

Warrantless searches are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. U.S.*, 389 U.S. 347, 357 (1967)). A well-settled exception to this rule arises when the search is conducted pursuant to voluntary consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (citing *Davis v. U.S.*, 328 U.S. 582, 593-94, (1946)). "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." *U.S. v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989) (citing *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). "In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth*, 412 U.S. at 229. "The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." *U.S. v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). The determination of consent must be conducted on a case-by case basis. *Id.* (citing *Schneckloth*, 412 U.S. at 226-27).

The Eleventh Circuit has identified a non-exhaustive list of factors to be considered in determining whether consent was voluntary, including voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found. *U.S. v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984) (citing *U.S. v. Phillips*, 664 F.2d 971, 1023-24 (5th Cir.1981)).[3]

---

[3] Neither party argued the applicability of these factors in their suppression pleadings or at the suppression hearing.

Here, although Defendant was detained involuntarily, the body camera video shows no evidence of any coercive police procedure. Detective Gullett did not threaten or physically intimidate Defendant in any way, did not falsely suggest that the warrant authorized him to search Defendant's vehicle, and did not make any promises or misrepresentations to obtain Defendant's consent. Defendant's demeanor on the video is wary but cooperative. Defendant acknowledged his *Miranda* warnings and said he understood them. Defendant appears to be over the age of 18 and sober, and nothing in the record indicates that he is of below average intelligence. As a convicted felon, he has some experience with the legal system, and therefore, at least some awareness of the protections afforded to suspected criminals. Defendant gave consent in front of several other people and stood by silently without protest as the search occurred. There is no evidence that his agreement to the search was not made freely and without constraint.

The Eleventh Circuit has previously found a search consensual where no verbal consent was given, but the defendant's body language indicated his assent to the search. *See U.S. v. Chrispin*, 181 Fed. Appx. 935, 939 (11th Cir. 2006) ("[A]lthough Chrispin did not express his verbal assent to be searched, his body language—turning away from Officer Lorente and placing his hands on the police cruiser as if preparing to be searched—gave implied consent. There is no evidence that his decision to do so was not freely made or without constraint."); *U.S. v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002) ("Although the officers did not receive any explicit verbal consent from Ramirez-Chilel to enter [the residence], the officers did receive some sort of implied consent to enter from Ramirez-Chilel's body language…"). Here, although Defendant did not verbally say "no" when Detective Gullett asked whether he minded if they searched his truck, Defendant said there would be nothing illegal in the truck and then shook his head in a signal that is commonly accepted to mean "no." Defendant makes no viable legal argument as to why these

actions did not establish his consent. Based on the totality of circumstances, I find Defendant freely gave his consent, and Detective Gullett's actions were constitutionally sound.

Another well-settled exception to the warrant requirement is the automobile exception. Under the automobile exception, police are constitutionally allowed to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search. *U.S. v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003). Although the original justification for the automobile exception was the exigency of the circumstances, the requirement of mobility is now satisfied merely "if the automobile is operational." *Id*. (noting that the Supreme Court has "made it clear that the requirement of exigent circumstances is satisfied by the 'ready mobility' *inherent* in all automobiles that reasonably appear to be capable of functioning"). Thus, if a vehicle reasonably appears to be functional, the readily mobile requirement is met and the only question that remains is whether there is probable cause for the search. *Id.*; *see also Pennsylvania v. Labron,* 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more."); *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (finding that no special exigency is required beyond a showing of the mobility of the automobile).

Here, Defendant's truck was mobile and operational. Defendant's Motion acknowledges that he did not live at the Residence but had just arrived there after undergoing dialysis treatment. Detective Gullett testified that he surveilled the residence previously in preparation for the search warrant, and the Ford F150 truck was not there. Thus, the truck was mobile, and the first requirement of the automobile exception is satisfied.

As to the second requirement, Defendant argues in the Motion that the positive alert of the K-9 did not establish probable cause because the K-9 was not reliable. With respect to dog sniffs

and alerts, courts recognize that an alert by a well-trained canine for the presence of narcotics can create probable cause. *See, e.g., U.S. v. Place*, 462 U.S. 696, 707 (1983) (discussing the intrusiveness of a dog sniff in the context of Fourth Amendment protections); *U.S. v. Banks*, 3 F.3d 399, 402 (11th Cir.1993) (citing prior Eleventh Circuit precedent and stating, "Our circuit has recognized that probable cause arises when a drug-trained canine alerts to drugs") (internal citations omitted); *U.S. v. Toepfer*, 2008 WL 2673878, at *2 (11th Cir. July 9, 2008) (per curiam) (unpublished) ("probable cause is established when drug-trained canine alerts to drugs") (citing *Banks*, 3 F.3d at 402).

The Supreme Court has rejected a "strict evidentiary checklist" for assessing a K-9's reliability. *Florida v. Harris*, 568 U.S. 237, 244-45 (2013). A "probable-cause hearing focusing on a dog's alert should proceed much like any other," and the relevant inquiry is whether "all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* at 247-48. Evidence of "a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 246. However, a defendant "must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses. *Id.* at 247. "The defendant, for example, may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty." *Id.* at 247. And even where "a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause, such as if the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions." *Id.* (citations and quotations omitted)).

The Government established Wyatt's certified training through Officer Pulliam's testimony and by admitting into evidence the pair's training certificates and records. Govt. Ex. 4. Wyatt initially completed 480 hours of road patrol training and 120 hours of narcotics detection training to become certified. As a team, Wyatt and Officer Pulliam were recertified by the state and nationally every year. Wyatt also performed additional yearly training with the Florida Department of Law Enforcement and performed ten hours of training per week with the FPPD. Based on the testimony and the evidence presented on the issue, I find that K-9 Wyatt was reliable. K-9 Wyatt's positive alert signal provided the officers with probable cause to believe Defendant's truck contained contraband. The vehicle's search was therefore proper under the automobile exception to the warrant requirement.

Although not raised in the Motion or Defendant's reply, at the evidentiary hearing, Defendant's attorney argued that K-9 Wyatt's alert is not reliable because a chair from the residence was placed against the truck prior to K-9 Wyatt's positive alert. Defense counsel is correct in that the body camera video shows a black chair leaning against Defendant's vehicle prior to K-9 Wyatt's sniff for narcotics and, although the chair was removed before Wyatt went around the vehicle, the dog alerted very near where the chair had been placed. Detective Gullett testified that the chair was obtained from the Residence and placed there for someone who was having trouble breathing to sit in when she exited the Residence. In closing argument, defense counsel stated for the first time that if the chair (which came out of a suspected drug house) had not been placed by the vehicle, the dog may never have alerted. Based on the chair, defense counsel argued that the K-9 sniff was unreliable.

I am not persuaded by this argument. First, it was not raised in the suppression Motion or even in Defendant's reply following the Government's response. Thus, the Government had no

opportunity to respond to it and given the fast-approaching trial date, there is no time for additional briefing. An argument raised for the first time in a reply or – as here – during closing argument of an evidentiary hearing will ordinarily not be considered. *See U.S. v. Samson*, 2020 WL 7698972, at *4 (S.D. Fla. Dec. 28, 2020) (quoting *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). Second, the argument is speculative, and Defendant has never sought to present any expert testimony or other evidentiary support which would allow me to properly consider or evaluate the likelihood that the dog was alerting to odor from the chair instead of the truck. Lastly, even if K-9 Wyatt's alert was less reliable because of the presence of the chair, police also had Defendant's consent to search the vehicle and were authorized to search on that basis. I therefore recommend that Defendant's Motion be denied.

## RECOMMENDATION

Based on the foregoing, I respectfully recommend that Defendant's Motion to Suppress, DE 22, be **DENIED** in its entirety.

## NOTICE OF RIGHT TO OBJECT AND SHORTENED OBJECTIONS PERIOD

Given the swiftly approaching trial date and in the interest of promoting judicial economy and finality to the parties, a prompt resolution of this Report and Recommendation is required. As such, I find it necessary and appropriate to shorten the time for any objections pursuant to Southern District of Florida Magistrate Judge Rule 4(a). Accordingly, the parties shall have **SEVEN (7) DAYS** from the date of being served with a copy of this Report and Recommendation to file written objections, if any, with U.S. District Judge Aileen M. Cannon. *See* 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a). Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and

shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within THREE (3) DAYS of the date of this Report and Recommendation.**

    **DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 17th day of October, 2023.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE
